UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WASTE ACTION PROJECT,<br><br>      Plaintiff,<br><br> v.<br><br>QUIGG BROS INC.,<br><br>      Defendant. | CASE NO. 3:24-cv-06012-LK<br><br>CONSENT DECREE |

## I. STIPULATIONS

WHEREAS, Plaintiff Waste Action Project filed a complaint on December 11, 2024 (Dkt. 1) against defendant Quigg Bros., Inc. ("Quigg") alleging violations of the Clean Water Act, 33 U.S.C. § 1251, *et seq.*, in relation to Quigg's heavy construction and water transportation facility located at or about 1021 River Street, Aberdeen, WA 98520 (the "Facility"), and any contiguous or adjacent properties owned or operated by Quigg, and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs.

CONSENT DECREE - 1

WHEREAS, Waste Action Project and Quigg (collectively the "Parties") agree that settlement of these matters is in the best interest of the Parties and the public, and that entry of this Consent Decree is the most appropriate means of resolving this action.

WHEREAS, the Parties stipulate to the entry of this Consent Decree without trial, adjudication, or admission of any issues of fact or law regarding Waste Action Project's claims or allegations set forth in its complaint and its sixty-day notice.

DATED this 28th day of May, 2025

| QUIGG BROS., INC. | WASTE ACTION PROJECT |
|---|---|
| By [signature in original]<br>Charles Quigg<br>Vice President | By [signature in original]<br>Greg Wingard<br>Executive Director |

## II.   ORDER AND DECREE

THIS MATTER comes before the Court on the Parties' Joint Motion for Entry of Consent Decree, Dkt. No. 15, the foregoing Stipulations of the Parties, and a letter from the United States stating that it has no objection to the proposed consent judgment or to its entry by the Court, Dkt. No. 16. Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1. This Court has jurisdiction over the Parties and subject matter of this action.

2. Each signatory for the Parties certifies for that Party that he or she is authorized to enter into the agreement set forth herein and to legally bind the Party or Parties, their successors in interest, and assigns.

3. This Consent Decree applies to and binds the Parties and their successors and assigns.

CONSENT DECREE - 2

4. This Consent Decree and any injunctive relief ordered within applies to Quigg's operation and oversight of the Facility.

5. This Consent Decree is a full and complete settlement and release of all the claims in Waste Action Project's complaint and the preceding sixty-day notice letter, and all other claims known or unknown that exist as of the date of entry of the Consent Decree that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from operation of the Facility. Upon termination of this Consent Decree, these claims are released and dismissed with prejudice. Quigg's payment of attorney's fees and litigation costs set forth in Paragraph 9 of the Consent Decree will be in full and complete satisfaction of any claims Waste Action Project and Smith & Lowney, PLLC have or may have, either legal or equitable, known or unknown, and of any kind or nature whatsoever, for fees, expenses, and costs incurred in relation to this lawsuit. Enforcement of this Consent Decree is Waste Action Project's exclusive remedy for any violation of its terms.

6. This Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by Waste Action Project in this case or of any fact or conclusion of law related to those allegations, nor evidence of any wrongdoing or misconduct on the part of Quigg or its members, employees, agents, affiliates, contractors, customers, or other third parties. Quigg agrees to the terms and conditions identified in Paragraphs 7–9 in full and complete satisfaction of all the claims covered by this Consent Decree:

7. Upon entry of the Consent Decree, Quigg will implement the following injunctive relief:

  a. Quigg will adhere to the terms and conditions of the Industrial Stormwater General Permit ("ISGP"), as may be modified, renewed, and/or amended by the Washington State Department of Ecology ("Ecology").

CONSENT DECREE - 3

  b. Prior to Quigg conducting any future over-water work on the outside hull of a vessel that would require a Shipyard Individual Permit, including construction, conversion, or alteration work, Quigg will either: (i) apply for and obtain coverage under a Shipyard Individual National Pollutant Discharge Elimination System ("NPDES") Permit from Ecology, or (ii) require that its tenant apply for and obtain coverage under a Shipyard Individual NPDES Permit from Ecology.

  c. Quigg will comply with the terms of any other NPDES permit for which Quigg applies and receives coverage at the Facility.

  d. Quigg will, on a monthly basis, provide written reports to Waste Action Project that identify: (i) progress towards obtaining a Shipyard Individual Permit, (ii) status of compliance with this consent decree, and (iii) copies of all communications with Ecology.

  e. Quigg will comply with ISGP Condition S7 concerning conducting and documenting monthly visual inspections of the Facility by qualified personnel including inspection components required by Condition S7.B and recording of results in an inspection report as required by Condition S7.C.

  f. Quigg will comply with ISGP Condition S9.C concerning submitting complete and accurate Annual Reports no later than May 15th of each year and including the documentation and information required by Condition S9.C.2-3.

  g. Beginning no later than the date of entry of the Consent Decree, any time any Ecology personnel requests entry to the Facility to perform an inspection, Quigg will comply with the requirements of ISGP Condition G3, including allowing the authorized Ecology representative to enter the premises, have access to records, inspect the Facility, and sample for purposes of assuring permit compliance.

CONSENT DECREE - 4

h. No later than the date of entry of the Consent Decree, Quigg will conduct an in-person evaluation of the Facility's dock to confirm that there are no scuppers or drains through which stormwater may discharge to the Chehalis River. If there are scuppers or drains through which stormwater may discharge to the Chehalis River, Quigg will, within thirty (30) days thereafter, designate a sampling location on the dock and commence sampling at this location per ISGP Condition S4.

i. Within thirty (30) days of entry of the Consent Decree (unless otherwise specified), Quigg will update its Stormwater Pollution Prevention Plan as follows:

　　i. Update the site map to depict the location of all structural source control best management practices ("BMPs") including labelling whether the laydown yards are "impervious surface areas" and depicting the locations and extent of each and every perimeter berm present onsite.

　　ii. Update the site map to depict the location and extent of the Circle Seafoods' leasehold.

　　iii. Add to the Pollution Prevention Team identification of who is responsible for SWPPP modifications.

　　iv. If Quigg obtains a Shipyard Individual NPDES Permit, it will update the Facility Description to describe the shipbuilding work.

　　v. If Quigg obtains a Shipyard Individual NPDES Permit, it will update the Inventory of Industrial Activities to include shipbuilding.

j. No later than the date of entry of the Consent Decree, Quigg's consultant, Anchor QEA, will consult with Waste Action Project's consultant, Dr. Richard Horner, on Quigg's behalf regarding adding mandatory BMPs from the 2024 Stormwater Management

CONSENT DECREE - 5

Manual for Western Washington ("SWMMWW") to its SWPPP and will add required BMPs to the SWPPP within thirty (30) days thereafter.

8. Payment to Environmentally Beneficial Projects: Within thirty (30) days of entry of this Consent Decree, Quigg will pay $199,500 (ONE HUNDRED NINETY-NINE THOUSAND FIVE HUNDRED DOLLARS) to the Rose Foundation for projects to address impairments to, and contribute to the improvement of, the water and/or sediment quality within the Chehalis River watershed and Grays Harbor, as described in Exhibit 1 to this Consent Decree. All such payments must adhere to the following restrictions on the use of funds:

  a. The Rose Foundation shall not fund any litigation of Clean Water Act citizen suits.

  b. Because Quigg's Aberdeen facility exists within the Chehalis River Watershed, the Rose Foundation shall only use funds to support projects intended to improve the water quality of the Chehalis River Watershed and the Grays Harbor Estuary. Furthermore, the Foundation shall work with community partners to select projects that benefit not only the watershed, but also neighborhoods and communities adversely impacted by environmental degradation in Chehalis River Watershed.

  c. After complete disbursement of funds, the Rose Foundation shall send a report to the Justice Department, the Court, and the Parties describing how the funds were utilized and demonstrating conformance with the nexus of the Consent Decree.

The check will be made to the order of the Rose Foundation and delivered to: Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Payment will include the following references in a cover letter or on the check: "Consent Decree, Waste Action Project v. Quigg Bros

CONSENT DECREE - 6

Inc., W.D. Wash. No. 3:24-cv-06012-LK, Aberdeen." Quigg will send a copy of the checks and cover letters, if any, to Waste Action Project and its counsel, pursuant to the notice provisions in Paragraph 18.

9. Within ten (10) days of entry of this Consent Decree, Quigg will pay $84,000 (EIGHTY FOUR THOUSAND DOLLARS) to cover Waste Acton Project's litigation fees, expenses, and costs (including reasonable attorneys and expert witness fees) by check payable and mailed to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, attn: Alyssa Koepfgen.

10. A force majeure event is any event outside the reasonable control of Quigg that causes a delay in performing tasks required by this Consent Decree that cannot be cured by due diligence. Delay in performance of a task required by this Consent Decree caused by a force majeure event is not a failure to comply with the terms of this Consent Decree, provided that Quigg timely notifies Waste Action Project of the event, the steps that Quigg will take to perform the task, the projected time that will be needed to complete the task, and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

11. Quigg will notify Waste Action Project of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen (15) days after Quigg becomes aware of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include

    a.    Acts of God, war, insurrection, or civil disturbance;

    b.    Earthquakes, landslides, fire, or floods;

    c.    Actions or inactions of third parties over which Quigg has no or limited control;

CONSENT DECREE - 7

    e.  Restraint by court order or order of public authority; and

    f.  Strikes.

12. This Court retains jurisdiction over this matter while this Consent Decree remains in force. While this Consent Decree remains in force, this case may be reopened without filing fees so that the Parties may apply to the Court for any further order that may be necessary to enforce compliance with this Consent Decree or to resolve any dispute regarding the terms or conditions of this Consent Decree. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the Parties must first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures for resolving the dispute. Such a meeting will be held as soon as practical but must be held within thirty (30) days after notice of a request for such a meeting to the other Party and its counsel of record. If no resolution is reached at that meeting or within thirty (30) days of the Notice, either Party may file a motion with this Court to resolve the dispute. In the event that the dispute is put before the Court for resolution, the prevailing or substantially prevailing party will be entitled to its reasonable attorneys' fees and litigation costs.

13. The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. Environmental Protection Agency ("EPA"). Therefore, upon the filing of this Consent Decree by the parties, Waste Action Project served copies of it upon the Administrator of the U.S. EPA and the U.S. Attorney General. *See* Dkt. No. 15 at 2; Dkt. No. 16.

14. This Consent Decree will take effect upon entry by this Court. The Consent Decree terminates three (3) years after the date of entry.

15. Both Parties have participated in drafting this Consent Decree.

16. This Consent Decree constitutes the entire agreement between the Parties. There are no other or further agreements, either written or verbal. This Consent Decree may be modified only upon a writing signed by both Parties and the approval of the Court.

17. If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either Party. The Parties agree to continue negotiations in good faith to cure any objection raised by the Court to entry of this Consent Decree.

18. Notifications required by this Consent Decree must be provided via email. For a notice or other communication regarding this Consent Decree to be valid, it must be sent to the receiving Party at the one or more email addresses listed below or to any other address designated by the receiving Party in a notice in accordance with this paragraph.

**If to Waste Action Project**:

Greg Wingard
Waste Action Project
gregWAP@earthlink.net

**And to**:

Alyssa Koepfgen
Katelyn Kinn
Smith & Lowney PLLC
alyssa@smithandlowney.com
katelyn@smithandlowney.com

**If to Quigg:**

Charles Quigg
Quigg Bros., Inc.
CharlieQ@quiggbros.com

**And to:**

Tisha Pagalilauan

CONSENT DECREE - 9

Christopher Berven
Cascadia Law Group PLLC
tpagalilauan@cascadialaw.com
cberven@cascadialaw.com

Any party identified in the notice provisions above may effect a change in the notice address by providing a notice complying with these provisions to all other parties listed. A notice or other communication regarding this Consent Decree will be effective the day it is transmitted. An email is effective the day it is sent so long as it is sent by 5:00 PM and on a business day, or else it is effective the following business day.

Dated this 22nd day of July, 2025.

_____
Lauren King
United States District Judge